444 So.2d 1078 (1984)
NATIONAL HEALTH LABORATORIES, INC., Appellant,
v.
BAILMAR, INC., Appellee.
Nos. 83-1592, 83-995.
District Court of Appeal of Florida, Third District.
January 24, 1984.
Rehearing Denied February 29, 1984.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and David M. Rogero, Miami, for appellant.
Horton, Perse & Ginsberg and Mallory Horton, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
National Health Laboratories, Inc., which was a business tenant of the appellee, Bailmar, Inc., appeals from an adverse judgment in the principal sums of $101,082.00 for additional rental based upon increases in the cost of living index, and $2,034.15 for increased property taxes. We reverse the former and affirm the latter award.
The operative facts are undisputed. In February, 1972, National's predecessor and Bailmar entered into a lease agreement, prepared by the lessee, for a five-year term commencing April 1, 1972 at a base rent of $1,574.00 per month. Two renewal options were provided; the first, for a three year term beginning April 1, 1977; the second, for an additional two years thereafter. Both options were duly exercised and National Health vacated the premises at the end of the second renewal term on March *1079 31, 1982, having made the specified monthly payments.
The lease provided that Bailmar could receive cost of living increases in the rent as of April 1, 1975 and at the commencement of each of the two renewal terms in proportion to the progressive increases in the Miami Wholesale Price Index for March, 1975, 1977 and 1980, respectively.[1] It was specifically provided, however, that

In order to effect the aforementioned rental adjustments at the end of the third year of the term hereof and/or in the event of exercise by Lessee of the renewal options, Lessor shall deliver to Lessee within 30 days after publication thereof, a true copy of each specified Index, and shall, as soon as practicable thereafter, compute the rental rate for the period and advise Lessee in writing. Pending determination of the increase, if any, Lessee shall continue to pay rent at the rate in effect for the immediately preceding period, and shall pay any arrearages caused by delays in the computation of such increase upon receiving notice from Lessor of the increase. The existence of any such arrearages shall not constitute any default under any provision of this lease agreement. [e.s.]
The lease also provided:
TWENTY-FIFTH: Lessee shall during the term hereof and any extensions thereof reimburse Lessor immediately upon demand for one fourth of the increase, if any, of the real property taxes applicable to the lots and buildings of which the demised premises constitute a part, over said taxes for the year 1971... .
In addition, along with a standard "time of-the-essence" clause,[2] the nineteenth clause of the lease stated:
NINETEENTH: The rights of the lessor under the foregoing shall be cumulative, and failure on the part of the lessor to exercise promptly any rights given hereunder shall not operate to forfeit any of the said rights.
The present controversy arose from the fact that Bailmar did not take any action to collect either the cost of living adjustments or the tax payments until July 24, 1981  well-subsequent to the beginning of the final period of renewal  when its attorney wrote a demand letter for those amounts.[3] In the ensuing litigation, the tenant contended, *1080 among other things, that the landlord's failure to comply with the lease provisions concerning the escalations precluded their recovery; and that its demand for the taxes was untimely. The trial court ultimately ruled otherwise. Based upon the perceived effect of the nineteenth clause of the lease and the application of an identical provision in Philpot v. Bouchelle, 411 So.2d 1341 (Fla. 1st DCA 1982), it held on rehearing that the lessor was entitled both to the cost-of-living increases retroactive to April 1, 1975  when they would first have become operative  and to the tax contributions due from the commencement of the lease in 1972.[4]
a. Award of Cost of Living Increases Unjustified. We cannot approve that portion of the judgment which allows recovery for the rent escalations attributable to the rises in the pertinent indices of inflation. The lease is explicit in its requirement that "in order to effect" those increases, the lessor "shall" deliver the respective index to the lessee within 30 days of its publication, which would have occurred in April, 1975, April, 1977 and April, 1980; compute, "as soon as practicable thereafter," the consequent supplemental rent due; and thereafter advise the tenant in writing accordingly. Admittedly, the appellee did not comply with these provisions and did not even begin the process of doing so until July, 1981, over a year after the last period began to run. It is clear, particularly in the light of the "time of-the-essence" clause, that the non-compliance with this unequivocally mandatory pre-condition to their entitlement precludes recovery of the escalated amounts under the terms of the lease itself. Of the countless authorities which might be cited in support of the controlling proposition that a party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract, Home Development Co. of St. Petersburg v. Bursani, 178 So.2d 113 (Fla. 1965), Saul J. Morgan Enterprises, Inc. v. 57th Ave. Development Corp., 305 So.2d 18 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 586 (Fla. 1975), and Sun Bank of Miami v. Lester, 404 So.2d 141 (Fla. 3d DCA 1981) seem among the closest to the present situation. See also, Homestead Properties v. Sanchoo, 443 So.2d 442 (Fla. 3d DCA 1984) for a recent application of the general rule.
Nor do we agree with the appellee and the trial court that Philpot compels, or even indicates a different result. That case indeed involved a clause, which was contained verbatim in the instant lease, that the rights of the lessor under the agreement are cumulative and are not forfeited by the failure to exercise any of them. But the court determined there only that this provision acted to preserve the already accrued rights of the landlord to insist upon the tenant's multiple breaches of the option clause of the lease, notwithstanding its acceptance (under protest) of late payments of rent. This holding has no application to this case, however, in which the appellant had committed no breach whatever, and in which the landlord, by virtue of its failure to adhere to the contractual prerequisites to its acquisition, obtained no "right" to the inflation increments in the first place.[5]
b. Award of Property Tax Increases Correct. Although it may seem paradoxical, we approve the requirement that the tenant pay its portion of the property tax increases for the same reason we have reversed the increased rental award: that is what the lease says. In sharp contrast to the time and notice conditions placed on the landlord for receiving the inflation-caused increases in rent, the tax clause provides only that the tenant "shall during the term hereof ... reimburse lessor [for those amounts] immediately upon demand." There is no requirement, as the *1081 tenant now contends, that the demand be made within a reasonable period or indeed at any particular time; no basis for our inserting one when the appellant, as the drafter of the instrument, could have but did not, 11 Fla.Jur.2d Contracts § 106 (1979); and thus no ground to relieve the tenant of this obligation.
For these reasons, the judgment under review is reduced to $2,034.15 plus interest from the date of demand, July 24, 1981. The award to the appellee of $20,000 in attorney's fees made below is consequently also reversed for reassessment in the light of the very substantial downward adjustment of its recovery effected by this opinion.
Affirmed in part, reversed in part.
NOTES
[1] In full, the renewal and escalation provisions were as follows:

The rental set forth in the foregoing paragraphs shall be subject to adjustment at the end of the first three years of the term hereof and, in this regard, shall be increased in proportion to the increase, if any, of the Wholesale Price Index for Miami, Florida (The "Index") for the month of March 1975 over the month of March 1972, as published by the United States Department of Labor.
Lessee shall have the following options to renew this lease:
a) First Option  Provided that Lessee gives Lessor notice at least six months prior to the end of the term hereof, Lessee may renew this lease for an additional three (3) year period under the same terms and conditions, except that the rental for such additional period shall be increased in proportion to the increase, if any, of the Index for the month of March, 1977 over the month of March 1975, provided, however, that the Index for the month of March 1975 shall not be lower for purposes hereof than for the month of March 1972.
b) Second Option  Provided that Lessee duly exercises the First Option as stated above and provided that Lessee gives Lessor notice at least six months prior to the end of the period covered by the First Option, Lessee may renew this lease for an additional two (2) year period under the same terms and conditions, except that the rental rate for such additional period shall be equal to the rate during the First Option renewal period, increased in proportion to the increase, if any, in the Index for the month of March, 1980 over the Index for the month of March, 1977, provided however that the Index for the month of March 1977 shall not be lower for purposes hereof than for either of the months of March 1975 or March 1972.
[2] It is understood and agreed between the parties hereto that time is of the essence of this contract and this applies to all terms and conditions contained herein.
[3] Although, under our view of the case, the fact is not controlling, it is of interest that Bailmar's principal testified that he deliberately delayed making the demands because he wished to postpone the receipt of these additional amounts to a more favorable tax year.
[4] The parties agreed upon the precise amounts involved.
[5] It is for this reason that we believe that the waiver doctrine, which presupposes the existence of a right to be voluntarily relinquished, e.g., Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945), does not really apply to the facts of this case. Cf. note 3, supra.