534 So.2d 716 (1988)
Joseph A. WOODARD, Appellant,
v.
PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, Appellee.
No. 87-765.
District Court of Appeal of Florida, First District.
September 27, 1988.
On Motion for Rehearing December 16, 1988.
*717 S. Perry Penland, Jr., of Penland, Penland & Pafford, P.A., Jacksonville, for appellant.
Gregg L. Wirtz and Karen Cole of Boyd & Jenerette, P.A., Jacksonville, for appellee.
ZEHMER, Judge.
Joseph A. Woodard appeals a final summary judgment entered in favor of Pennsylvania National Mutual Insurance Company on his claim for uninsured motorist benefits. He contends that, having exhausted the bodily injury liability coverage under the policy insuring the driver of the vehicle in which he was injured, he may recover uninsured motorist benefits under that same policy because the driver of the other automobile involved, who was found along with Woodard's driver to be jointly and severally liable for Woodard's injuries, was uninsured. We agree and reverse.
On August 20, 1985, Woodard was injured in an automobile accident when a car driven by Nathan Yergy in which he was riding collided with a car driven by Gary Fairfield. Woodard sued both Yergy and Fairfield for their negligence and a judgment was entered finding both drivers jointly and severally liable to Woodard.[1] Woodard collected the $10,000 bodily injury liability limits from Yergy under Yergy's Pennsylvania National insurance policy, but was unable to recover any benefits from Fairfield because Fairfield was uninsured at the time of the accident. Woodard subsequently applied to Pennsylvania National for Yergy's uninsured motorist coverage benefits, but Pennsylvania National refused to pay such benefits. Woodard then filed suit against Pennsylvania National *718 claiming entitlement to uninsured motorist coverage from Yergy's policy for the damages negligently caused by Fairfield and seeking a declaratory judgment declaring his right and entitlement to those benefits.
Woodard moved for partial summary judgment on the issue of his entitlement to such benefits as a matter of law. The trial court granted his motion and entered a partial summary judgment in his favor, finding that the legislature specifically intended that the 1984 amendment to the uninsured motorist statute, § 627.727, Fla. Stat. (Supp. 1984), make uninsured motorist coverage available in cases such as this. Subsequently, Pennsylvania National filed a motion requesting that the trial court reconsider the partial summary judgment on the ground that Nicholas v. Nationwide Mutual Fire Insurance Company, 503 So.2d 993 (Fla. 1st DCA 1987), an opinion published after entry of the partial summary judgment, was dispositive of the declaratory judgment issue of coverage and mandated that the court set aside the partial summary judgment for Woodard. The trial court reluctantly granted Pennsylvania National's motion, set aside the partial summary judgment for Woodard and entered a final summary judgment in favor of Pennsylvania National. Although the trial court expressed its disagreement with these decisions, it entered judgment for Pennsylvania National because it found that Nicholas and Fidelity and Cas. Co. of New York v. Streicher, 506 So.2d 92 (Fla. 2d DCA 1987), established that even under the 1984 amendment to the uninsured motorist statute an injured person is precluded from recovering under both the liability and uninsured motorist provisions of the same policy. Woodard appeals the final summary judgment.
The law of Florida is well established that
Under every uninsured motorist policy issued in Florida, an insured is entitled to uninsured motorist benefits where (1) he has been injured by an uninsured motor vehicle and (2) he is "legally entitled to recover" from the operator of the uninsured motor vehicle. Allstate Insurance Company v. Boynton, 486 So.2d 552 (Fla. 1986).
Jernigan v. Progressive American Ins. Co., 501 So.2d 748, 750 (Fla. 5th DCA 1987). Woodard has obtained judgment against both Fairfield and Yergy, so he has clearly satisfied the second requirement. The question to be resolved on this appeal is whether appellee has shown, as a matter of law under the applicable statute and policy provisions, that Woodard cannot prove that "he has been injured by an uninsured motor vehicle."
The decisions in both Nicholas and Streicher were predicated on State Farm Mut. Auto. Ins. Co. v. McClure, 501 So.2d 141 (Fla. 2d DCA 1987), a case that interpreted the 1983 version of uninsured motorist statute. In McClure, the wife of a passenger killed in an automobile owned and operated by the insured driver attempted to recover uninsured motorist coverage under the driver's policy after having exhausted the liability limits of that policy. The insurance policy at issue in that case contained the following provisions:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle.
An uninsured motor vehicle does not include a land motor vehicle: (1) insured under the liability coverage of this policy.
The court stated that the applicable statutory provision was § 627.727(2)(b), Florida Statutes (1983) which provided that an:
insurer shall make available, at the written request of the insured, excess underinsured motor vehicle coverage, providing coverage for an insured motor vehicle when the other person's liability insurer has provided limits of bodily injury liability for its insured which are less than the damages of the injured person purchasing such excess underinsured motor vehicle coverage. Such excess coverage shall provide the same coverage as the uninsured motor vehicle *719 coverage provided in subsection (1), except that the excess coverage shall also be over and above, but shall not duplicate, the benefits available under the other person's liability coverage. The amount of such excess coverage shall not be reduced by a setoff against any coverage, including liability insurance. (Emphasis supplied.)
The plaintiff in McClure argued that the policy's exclusionary language conflicted with the uninsured motorist statute and thus was void as against public policy, because that language limited the application of uninsured motorist coverage to less than that required by the statute. The Second District disagreed, finding no conflict between the policy language and the statute and ruling that a person insured under such policy was precluded from collecting both liability coverage and uninsured motorist coverage under the same policy. The court reasoned that § 627.727, Fla. Stat. (1983), which explicitly refers to an "other person's liability coverage," contemplates a separate tortfeasor with the result that uninsured motorist benefits are only intended to be provided when a negligent third party was actually uninsured or underinsured because that person's liability coverage was less than the amount of damages caused by the injury. Accordingly, the court gave effect to the policy provision prohibiting payment of uninsured motorist coverage and liability coverage under the same policy.
In 1984, the legislature amended section 627.727 by deleting subsection (2)(b) of § 627.727.[2] The 1984 amendment also changed a portion of the language of subsection (1) to read (the underlining and strike-through represent words or letters that were added to or deleted from the existing statute):
The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers' compensation law, personal injury protection benefits, disability benefits law, or similar law; under any automobile medical expense coverages; under any motor vehicle liability insurance coverage or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident; and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section.
Under the 1983 version of § 627.727(1), the next sentence read:
Only the underinsured motorist's automobile liability insurance shall be set off against underinsured motorist coverage.
The 1984 act amended that sentence to read:
The amount of coverage available under this section shall not be reduced by a setoff against any coverage, including liability insurance.
The effect of the changes made by the 1984 amendment are abundantly clear. The references to "other person's liability insurer" were deleted in favor of language referring to "any motor vehicle liability insurance coverage," the effect of which is to make underinsured coverage additional insurance over and above all liability insurance, not only over and above that covering a third party as held in McClure, but also over and above the liability coverage contained in the policy providing underinsured coverage as well. The provisions allowing set off by the uninsured motorist's liability insurer were deleted and replaced in 1984 by a provision prohibiting any reduction of uninsured coverage or set off by reason of any liability insurance coverage applicable, including that in the policy providing underinsured *720 coverage. Rather than prohibiting the payment of both liability benefits and uninsured motorist benefits under the same policy to the same insured, these amendments clearly indicate that in appropriate circumstances both liability coverage benefits and uninsured motorist benefits may be paid under the same policy to the same insured person. These statutory changes, however, would require such a result only if the vehicle involved were shown to fall within the definition of "uninsured motor vehicle" contained in section 627.727(3)(b), quoted in footnote 2 above.[3] Bearing this in mind, we now examine the opinions in Nicholas and Streicher.
Nicholas v. Nationwide Mutual Fire Ins. Co., 503 So.2d 993 (Fla. 1st DCA 1987), one of the cases the trial court felt compelled to follow in entering summary final judgment in the instant case, involved the application of the post-1984 amendment. In Nicholas, the plaintiff Nicholas's son was killed while traveling as a passenger in a car driven by Tinney, the insured. Nicholas recovered liability benefits under Tinney's insurance policy on account of Tinney's negligence, and then sought to recover uninsured motorist benefits under the same policy based on Tinney's negligence. Although the court recognized that McClure involved the 1983 version of the uninsured motorist statute, it followed that case and held without further explanation "that a plaintiff cannot recover liability coverage on a vehicle insured by a policy and then claim that the same vehicle is `uninsured' under the same policy for the purpose of recovering uninsured motorist benefits under that policy." 503 So.2d at 994. For reasons hereafter stated, the result of this decision is correct even if the McClure decision was not controlling in that instance.
In Fidelity & Casualty v. Streicher, 506 So.2d 92 (Fla. 2d DCA 1987), the other case on which the trial court relied, the Second District construed a policy containing a definition of "uninsured or underinsured motor vehicle" which excluded "any vehicle owned by the insured or a relative." In holding that the plaintiff, a passenger in her parents' car, could not collect under both the liability and the uninsured motorist provisions of the policy that covered the vehicle involved in the accident, the court followed McClure and Nicholas, stating that it did not feel that the legislature intended, in its 1984 amendment to the uninsured motorist statute, to require that an automobile insurance policy provide both liability and underinsured motorist coverage to the same injured party. Once again, for reasons hereafter set forth, we conclude the result of that case is eminently correct, although not for the reason given by the court.
Referring to the two elements essential to recover uninsured motorist benefits quoted above, it is clear that the critical threshold question in both Streicher and Nicholas was whether either of the two vehicles covered by the policy providing uninsured motorist coverage was an "uninsured motor vehicle" under the statutory definition in the 1984 act set out in footnote 2 above. The opinion in Streicher states that the limits of bodily injury liability coverage and uninsured motorist coverage were both $100,000. While the opinion in Nicholas does not state the limits of coverage, we assume (and this court's records in that case file confirm) that the limits of the liability coverage and uninsured motorist coverage were the same. Thus, in neither case did the motor vehicle involved meet the statutory definition of an uninsured motor vehicle because the amount of liability coverage on the vehicle was not less than the amount of uninsured motorist coverage. Without establishing that the vehicle was uninsured under the statutory *721 definition, there was no legal basis for requiring the insurer to pay any benefits under the uninsured motorist provision absent policy provisions requiring it to do so.
We conclude that neither Streicher nor Nicholas precludes recovery of uninsured motorist benefits under the facts of the instant case. Apart from the fact that in neither case did the vehicle involved qualify as an "uninsured motor vehicle," in each of those cases liability insurance on that vehicle had been paid and the plaintiff was trying to effectively stack the uninsured motorist coverage on top of the liability coverage. We discern no language in the 1984 act which mandates such result. On the other hand, in the instant case Woodard was not attempting to collect uninsured motorist coverage on the vehicle in which he was riding based on Yergy's negligence, but was seeking to collect the damages owed by Fairfield for Fairfield's negligence. Woodard was not claiming that Yergy's vehicle fit within the definition of an "uninsured or underinsured motor vehicle"; he was claiming that Fairfield's vehicle was an "uninsured motor vehicle." Woodard, unlike the plaintiff in Nicholas, did not claim that the same vehicle was insured for one purpose and uninsured or underinsured for another; he admitted that the vehicle in which he was riding was insured and was simply claiming that the other vehicle, Fairfield's, was uninsured.
The Florida supreme court discussed, in great detail, the purpose of the uninsured motorist statute in Mullis v. State Farm, 252 So.2d 229 (Fla. 1971). The court stated that the uninsured motorist coverage prescribed by statute (then section 627.0851),

is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law, i.e., to say coverage where an uninsured motorist negligently inflicts bodily injury or death upon a named insured, or any of his family relatives resident in his household, or any lawful occupants of the insured automobile covered in his automobile liability policy.

252 So.2d at 237, 238 (emphasis supplied). The court further stated that lawful occupants of an insured automobile
are protected only if they receive bodily injury due to the negligence of an uninsured motorist while they occupy the insured automobile of the named insured with his permission or consent.
252 So.2d at 233.
Permitting a person to collect both liability benefits and uninsured motorist benefits from the same policy under the facts of this case comports with the manifest purpose of the uninsured motorist statute. Woodard was a lawful occupant of an insured car and he was injured by an uninsured motorist. If Fairfield, the uninsured motorist, had been covered by liability insurance, Woodard would have been able to recover such insurance in addition to the benefits already recovered under the liability portion of his driver Yergy's policy. However, Fairfield was not insured. Persons in covered automobiles who are injured by persons in uncovered automobiles constitute the exact class of persons the statute was designed to protect. The new language in the 1984 amendment evidences the legislature's clear intent that these persons will, in fact, be protected even when the circumstances are such that a person is collecting under both the liability and uninsured motorist portions of the same policy. Thus, we hold that Woodard, being a person injured in a motor vehicle accident who has exhausted the liability coverage of the policy of the driver in whose car he was injured without satisfying the amount of his damages, may collect uninsured motorist benefits under the same policy because the driver of the other automobile found to be jointly and severally liable to him was uninsured.
Pennsylvania National makes the additional argument that since Woodard collected $10,000 in liability benefits he cannot collect $10,000 in uninsured motorist benefits because the policy provides that *722 any amount payable for damages under the uninsured motorist coverage shall be reduced by all sums paid under the liability coverage. In other words, Pennsylvania National asserts that the $10,000 liability coverage must reduce or be set off against the $10,000 uninsured motorist coverage. We hold this policy provision invalid. The 1984 amended uninsured motorist statute expressly prohibits reduction of uninsured motorist coverage by a setoff against liability coverage. § 627.727(1), Fla. Stat. (Supp. 1984). In accordance with the amended statute, uninsured motorist protection is to be available in addition to liability coverage, rather than reduced by such coverage.[4]
The final summary judgment entered in favor of Pennsylvania National is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
SHIVERS and WIGGINTON, JJ., concur.

ON MOTION FOR REHEARING
Upon reviewing appellee's motion for rehearing, we find only one matter warranting discussion. Appellee asserts in its motion that our opinion contains an incorrect statement of fact in that it states, "Woodard sued both Yergy and Fairfield for their negligence and a judgment was entered finding both drivers jointly and severally liable to Woodard." Contrary to appellee's contention in its motion for rehearing, appellee represented to the court in its answer brief that, "Prior to suing Penn National for uninsured motorist benefits, Woodard sued Nathan Yergy and Gary Fairfield. Yergy and Fairfield were found jointly and severally liable to Woodard." We necessarily relied on appellee's representation, which appellant did not dispute, in describing the relevant facts, even though appellee provided us no record citation in support of the statement.
Now, however, because the parties agree that the sentence at issue is factually incorrect, and because our repeated search of the record does not reveal evidence of any finding of joint and several liability in another suit, we accept the parties' present representation and delete the above-quoted sentence from our opinion. We amend the succeeding sentence in the opinion to read as follows: "Woodard collected the $10,000 bodily injury liability limits from Yergy under Yergy's Pennsylvania National insurance policy, but was unable to recover any benefits from Fairfield because, although Yergy and Fairfield could have been held jointly and severally liable to Woodard, Fairfield was uninsured at the time of the accident." This amendment has no material effect on our decision, and appellee's motion for rehearing is denied.
In support of its motion for rehearing, appellee filed a motion to supplement the record on appeal with a copy of a purported release given by the Woodards to Yergy, Fairfield, and Pennsylvania National Mutual Insurance Company. The motion fails to show that this release was a part of the record before the trial court and is, therefore, improper. The motion to supplement the record on appeal is denied.
SHIVERS and WIGGINTON, JJ., concur.
NOTES
[1] The record does not reveal the amount of the judgment.
[2] Under the 1984 act the term "uninsured motor vehicle" is defined as including one covered by insurance which provides "limits of bodily injury liability for its insured which are less than the limits applicable to the insured person provided under uninsured motorist's coverage applicable to the injured person." § 627.727(3)(b), Fla. Stat. (Supp. 1984). This same definition appeared in the 1983 version of the act. Therefore, in this opinion we use the terms "uninsured" and "underinsured" interchangeably within the meaning of this statutory definition.
[3] For example, should the amount of liability coverage under the policy be less than the amount of uninsured motorist coverage (e.g., as a result of permissible stacking of uninsured motorist coverages on two or more vehicles), and thereby cause the vehicle to meet the statutory definition of "uninsured motor vehicle," the insurer could conceiveably be held to pay benefits up to the total amount of such uninsured motorist coverage provided the damages suffered exceeded that amount notwithstanding that that policy also provided liability coverage.
[4] Achievement of stability in the automobile insurance law of this state seems to be an unobtainable objective. During the 1988 session, the legislature once again made substantial amendments to section 627.727, which become effective October 1, 1989. Ch. 88-370, § 15, Laws of Fla. Since these amendments cannot affect the result in this case, we have not considered the impact of these changes to the language of the statute construed in this opinion.