SCHWARTZ, Chief Judge.
On March 23, 1983, the plaintiff Otero was a passenger in a vehicle operated by her adult sister, Gladys Vidiella, when she was seriously injured in a one-car accident caused by the driver’s negligence. Since the vehicle owned by Vidiella was under repair, the car she was driving was a borrowed replacement which was concededly covered by her personal Commercial Union Insurance Company policy. It had limits of $10,000 in liability coverage and $50,000 in uninsured motorist protection. Otero suffered damages in the accident which exceeded $50,000 and made a claim on Com *687 mercial Union for $50,000 in benefits.[1] Commercial Union tendered instead only the $10,000 in liability limits. Having stipulated to these operative facts in the instant action brought to resolve the conflict, both parties moved for summary judgment in their favor. The trial judge granted the carrier’s motion on the holding that only $10,000 was available. We reverse upon our agreement with Otero that she was entitled to $50,000 in total coverage,
,, . , . our V1®w> this result is mandated by a simple application of the terms of the poli-cy [2] and the applicable statute [3] to the undisputed facts. There is no question that:
*688 1. The tortfeasor, Gladys Vidiella, was liable to Otero for her negligence in operating the vehicle and is insured under the liability portion of the Commercial Union policy.[4]
2. As a passenger occupying the insured vehicle, Otero — again by both policy definition and statutory requirement — was a so-called class II insured under the UM coverage. Ivey v. Chicago Ins. Co., 410 So.2d 494 (Fla.1982); Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229 (Fla.1971); Lumbermens Mut. Casualty Co. v. Martin, 399 So.2d 536 (Fla. 3d DCA 1981), review denied, 408 So.2d 1094 (Fla.1981).
3. Since the liability limits, $10,000, under the applicable liability policy are “less than the limits of liability [$50,000] for this [UM] coverage under [the] policy,” the vehicle is an uninsured motor vehicle as defined by the policy itself, see supra note 2, and the statute, see supra note 3 {“[T]he term ‘uninsured, motor vehicle’ shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof ... Pijas provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist’s coverage applicable to the injured person.’’). It thus follows as does the night the day that the plaintiff is entitled to recover under the UM coverage to the extent of the $50,000 limits less the $10,000 available for the tortfeasor’s liability, see § 627.727(1), Fla.Stat. (1983); Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla.1978); State Farm Mut. Auto. Ins. Co. v. Jenkins, 370 So.2d 1201 (Fla. 1st DCA 1979). Put another way, Otero is entitled to $40,000 in underin-sured coverage plus the $10,000 in liability. In either event, Commercial Union must pay $50,000 as claimed.[5]
We see nothing in either the policy, the applicable statute, or the decided cases which, as Commercial Union contends, even indicates, let alone requires a different result. While some of the decided cases have referred to the principle, see supra note 5, that liability and UM coverage cannot be conferred by the same policy, none involves the present unique situation in which the liability limits are less than both the UM limits and the extent of the insured’s damages. To the contrary, as in State Farm Mut. Auto. Ins. Co. v. McClure, 501 So.2d 141 (Fla. 2d DCA 1987), review denied, 511 So.2d 299 (Fla.1987), and Woodard v. Pennsylvania Nat. Mut. Ins. Co., 534 So.2d 716 (Fla. 1st DCA 1988), review dismissed, 542 So.2d 989 (Fla.1989), the liability and the UM limits were identical. Thus, in those cases, the policy and statutory definitions of an un- or underinsured motor vehicle — which requires UM coverage in excess of liability — simply did not apply ab initio. See generally Morrison v. Universal Underwriters Ins. Co., 543 So.2d 425 (Fla. 5th DCA 1989) (comprehensive discussion of issues presented when liability limits are equal to or greater than UM coverage). Moreover, in those decisions as well, the plaintiff was in effect attempting to stack the UM coverage upon or render it excess to the liability limits. Such a proposed result was contrary to the applicable 1983 statute which did not provide for stacking and which expressly forbade the provisions of “both uninsured and excess underinsured” coverage in the same policy. *689 In this case, the plaintiff does not seek and we do not approve the stacking or excess treatment of the two coverages — which would yield $60,000 in benefits. Rather we apply the clear terms of the policy to provide for $50,000.
In sum, the tortfeasor had $10,000 in liability coverage; the injured plaintiff had $50,000 in un-underinsured motorist coverage available and more than $50,000 worth of injuries. In this state of affairs, there is simply no reason to deny the plaintiff the $10,000 plus $40,000 in benefits to which she is entitled simply because the two distinct forms of coverage are provided, as they indubitably are, in the same insuring agreement. There is no need to resort to the usual rules with respect to the treatment of insurance policies, see Stuyvesent Ins. Co. v. Butler, 314 So.2d 567 (Fla.1975); Hartford Fire Ins. Co. v. Spreen, 343 So.2d 649 (Fla. 3d DCA 1977), to reach the conclusion that, since contracting parties are held to their voluntary undertakings, Natl. Health Laboratories, Inc. v. Bailmar, Inc., 444 So.2d 1078 (Fla. 3d DCA 1984), review denied, 453 So.2d 43 (Fla.1984), the plaintiff is entitled to prevail.
Reversed.

. See note 4, infra.

. The pertinent provisions of the Commercial Union policy are as follows:
PART A
LIABILITY COVERAGE We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.
******
"Covered person” as used in this Part means:
******
2. Any person using your covered auto.
******
PART C
UNINSURED MOTORISTS COVERAGE We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person.... [emphasis supplied]
******
"Covered person" as used in this Part means:
******
2. Any other person occupying your covered auto.
******
“Uninsured motor vehicle” means a land motor vehicle or trailer of any type:
******
2. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limits of liability for this coverage under this policy, [emphasis supplied]

. The parties agree that the governing statute is the 1983 version of section 627.727, Florida Statutes, which provides in relevant part:
(1)No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. ... The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers’ compensation law, personal injury protection benefits, disability benefits law, or similar law; under automobile medical expense coverages; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident. Only the underinsured motorist’s automobile liability insurance shall be set off against underin-sured motorist coverage....
(2)(a) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured; but in any event the insurer shall make available, at the written request of the insured, limits up to $100,000 each person and $300,000 each occurrence, irrespective of the limits of bodily injury liability purchased, in compliance with the rating plan of the company.
(b) In addition, the insurer shall make available, at the written request of the insured, excess underinsured motor vehicle coverage, providing coverage for an insured motor vehicle when the other person’s liability insurer has provided limits of bodily injury liability for its insured which are less than the damages of the injured person purchasing such excess underinsured motor vehicle coverage. Such excess coverage shall provide the same coverage as the uninsured motor vehicle coverage provided in subsection (1), except that the excess coverage shall also be over and above, but shall not duplicate, the benefits available under the other person’s liability coverage. The amount of such excess coverage shall not be reduced by a setoff against any coverage, including liability insurance. An insurer shall not provide both uninsured motor vehicle coverage and excess underin-sured motor vehicle coverage in the same policy.
(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
******
(b) Has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under uninsured motorist’s coverage applicable to the injured person, [emphasis supplied]

. The fact that Otero and Vidiella are sisters is legally irrelevant both because (a) there is no family or other similar exclusion in the insurance policy, compare Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla.1977), and (b) since they are adults who reside in different households, the doctrine of family immunity does not apply to insulate the negligent driver from liability. See Smith v. Somera, 389 So.2d 1080 (Fla. 3d DCA 1980) (no intra-family immunity in suit between adult siblings).

. The plaintiff below purported to “reject” the $10,000 liability coverage, claiming only the $50,000 in UM benefits. While she apparently took this legal tack in the belief that she would thereby avoid the supposed doctrine that one may not recover both liability and UM under the same policy, she obviously could not unilaterally create or extend uninsured motorist coverage by denying the existence of a $10,000 liability policy available to protect the negligent driver. As indicated below, however, we do not believe that the “two coverages-one policy” language applies to this case. In any event, since she is legally entitled to the $50,000 under the rationale advanced in this opinion, it hardly matters that she sought to reach the same destination by a different legal route below.