**QANTUM COMMUNICATIONS CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**STAR BROADCASTING, INC., a Florida corporation, and Ronald E. Hale, Sr., Defendants.**

No. 05–21772CIV.

United States District Court, S.D. Florida. Miami Division.

Aug. 16, 2005.

John F. O'Sullivan and Jason Kellogg of Akerman Senterfitt PA were counsel for the plaintiff, Quantum Communications Corporation.

Ronald B. Ravikoff and Richard C. Seavey of Zuckerman Spaeder LLP were counsel for the defendants, Star Broadcasting, Inc. and Ronald E. Hale Sr.

## CORRECTED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for A Temporary Restraining Order and Preliminary Injunction (D.E. No. 5), filed on *July 1, 2005*. For the reasons discussed below, Plaintiff's motion for a preliminary injunction is **GRANTED in part** and **DENIED in part**.

### I. Background

This case involves a breach of contract action relating to an Asset Purchase Agreement ("Agreement") executed on September 5, 2003 for the purchase of "WTKE," a radio station in Ft. Walton Beach, Florida. Plaintiff Qantum Communications Corporation ("Qantum") describes the radio station assets as being the more important part of a two-station deal between Plaintiff and Defendants, Star Broadcasting, Inc. ("Star") and Ronald E. Hale, Sr. ("Hale") (collectively "Defendants") (D.E. No. 5 at 1).[1] Plaintiff's

---

1. Defendants state that both parties understood that Defendants did not own WTKE at the time of the agreement, but that Defendants were in the process of acquiring it through a "station swap" with Clear Channel Communications, Inc., which required approval from the Federal Communications Commission ("FCC"). (D.E. No. 26 at 5).

verified complaint requests declaratory relief, injunctive relief, and specific performance. Plaintiff alleges that the WTKE assets are unique, that specific performance was the relief specified in the contract, and that the WTKE assets are a strategically essential part of Plaintiff's business plan to enter the Ft. Walton Beach market. *Id.* at 2–3.

In essence, Plaintiff alleges that Defendants breached the "Non–Solicitation" provision of the Agreement by negotiating with Plaintiff's main competitor, Cumulus Broadcasting, Inc. and then contracting to sell the WTKE assets to the competitor.[2] On April 14, 2005, Defendants gave termination notice to Plaintiff, pursuant to a provision of the contract that allows termination for either party provided that the closing has not been consummated on or before eighteen months after the date of the Agreement, and provided that "the party seeking to terminate this Agreement is not then in breach of this Agreement."[3] However, Plaintiff argues that this termination notice was invalid because Defendants were already in breach of the Agreement's "Non–Solicitation" provision and various other alleged breaches.[4]

In contrast, Defendants argue that it had become apparent that the deal would not be consummated before the expiration of the Agreement because of FCC licensing issues, and that Plaintiff "manufactured" breaches in order to prevent Defendants from terminating the Agreement. When the Plaintiff sent Defendants a "breach letter" dated January 12, 2005, the Defendants issued a response letter dated February 11, 2005, which Defendants claim explained why breaches had not in fact occurred or cured immaterial breaches. (D.E. No. 26 at 7).

This Court has diversity jurisdiction over the parties under 28 U.S.C. § 1332. Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in Connecticut. Defendant Star Broadcasting is a corporation organized under the laws of Florida, with its principal place of business in Ft. Walton Beach, Florida. Defendant Ronald Hale is a resident of the state of Florida. In an Order dated August 4, 2005, this

---

Defendants note that while the parties did not anticipate problems receiving FCC approval of Plaintiff or Defendants acquiring WTKE, the parties did anticipate difficulties in Clear Channel acquiring approval for the "station swap." *Id.*

**2.** Section 8.9 of the Agreement states:
8.9 *Non–Solicitation.* As long as this Agreement is in effect and except as otherwise provided in this Agreement, neither Seller nor any of its principals shall directly or indirectly solicit, entertain, negotiate with any person or entity (other than a party hereto) or accept any proposal to acquire Seller, the Station or any of the Station Assets in whole or in part, including without limitation an acquisition of all or substantially all of the assets of Seller or any equity in Seller.
(D.E. No. 1 at Exhibit C, page 21).

**3.** Section 17.1(g) of the Agreement states, in relevant part, that the Agreement may be terminated "by written notice of either party to the other if the Closing shall not have been consummated on or before the date eighteen months after the date of this Agreement and the party seeking to terminate the Agreement is not then in breach of this Agreement …" (D.E. No. 1 at Exhibit A, page 32).

**4.** The alleged breaches include: a) failure of Defendants to enter into a Local Marketing Agreement, b) refusal of Defendants to allow Plaintiff to exercise an option to lease antenna space at the Tower, c) refusal of Defendants to negotiate in good faith regarding the option to purchase the Tower, d) failure of Defendants to provide various financial reports to Plaintiff, and e) failure of Defendants to comply with a provision requiring the parties to the Agreement not to take any action "which is inconsistent with this Agreement." (D.E. No. 5 at 8–9).

Court denied Defendants' motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), to transfer for improper venue under 28 U.S.C. § 1406(a), and to transfer for convenience of the parties pursuant to 28 U.S.C. § 1404(a). (D.E. No. 41).

On July 5, 2005 this Court issued an Order granting Plaintiff's motion for a Temporary Restraining Order (D.E. No. 10) after an *ex parte* hearing on the same date. The Court later extended the Temporary Restraining Order, with the consent of the parties, until August 3, 2005 in an Order Granting Agreed Motion for Continuance of Preliminary Injunction Hearing (D.E. No. 17), issued on July 8, 2005. That Order stated that the Temporary Restraining Order was extended until August 3, 2005, or until further order of the Court, whichever period is shorter. Following a preliminary injunction hearing held on the record on August 3, 2005, this Court extended the Temporary injunction until August 12, 2005 in order to more fully consider the arguments made by both parties at the preliminary injunction hearing. (D.E. No. 37).

## II. Analysis

In order to prevail in its request for a preliminary injunction, a party must prove the following elements:

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the ... [party asking for the injunction] outweighs the harm an injunction may cause ... [the other party], and (4) that granting the injunction would not disserve the public interest.

*Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir.2001) (quoting *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to all four elements." *CBS Broad., Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir.2001) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000); *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir.1987) (stating that a moving party must prevail on all four elements before a preliminary injunction may issue)).

In this case, Plaintiff has clearly established all four elements and met its burden for a preliminary injunction as to its request for declaratory relief finding that Defendants' April 14, 2005 termination of the Asset Purchase Agreement is invalid.

### A. Substantial Likelihood of Success on the Merits

This Court agrees that, based on the evidence before the Court at this time, Plaintiff is likely to succeed on the merits of its claim that Defendants are currently in breach of their obligations under the Asset Purchase Agreement and that Defendants were in breach on April 14, 2005 when they issued their purported notice of termination. Furthermore, this Court agrees that Plaintiff is likely to succeed in proving that Defendants were in breach on March 5, 2005, the date that the Agreement became terminable by either party not in breach.

"[W]hen the terms of a contract are clear and unambiguous, the contracting parties are bound to those terms and may not rewrite the contract to make it more advantageous or reasonable for one of the contracting parties." *Burger King Corp. v. Ashland Equities, Inc.*, 217 F.Supp.2d 1266, 1273 (S.D.Fla.2002) (holding that the plain language of the contract controls under Florida law and that under Florida law every contract includes implied duty of good faith). Under governing

Florida law, a party is bound by the clear and unambiguous terms of a voluntary contract. *Nat'l Health Laboratories, Inc. v. Bailmar, Inc.*, 444 So.2d 1078, (Fla. 3d DCA), *review denied*, 453 So.2d 43 (Fla. 1984). Furthermore, the Eleventh Circuit has held that contracts which set forth the manner in which a party must exercise a remedy in the event of a default must be strictly adhered to. *Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 903–04 (11th Cir.2000) (holding that an employee failed to satisfy contract's termination clause because he did not send a written notice specifying the employer's alleged breach).

■ Here the evidence presented by both parties, including the deposition of Ronald Hale and the Deposition of Lew Dickey, and the evidence presented at the preliminary injunction hearing, shows that Plaintiff is likely to succeed in proving that Defendants breached Section 8.9 of the Agreement (i.e. the "No Solicitation Provision."). This Court is not persuaded by Defendants' arguments that any alleged breaches, including those of the Non–Solicitation provision are "immaterial." (D.E. No. 26 at 12). Rather, this court finds that the evidence presented to the Court in their filings and at the preliminary injunction hearing shows that Plaintiff has a substantial likelihood of success in proving that Defendants were in material breach of the Agreement as early as October 2004. (D.E. No. 36 at Exh. 63). Thus, Plaintiff has showed a likelihood of success in its request for declaratory relief finding that the April 14, 2005 termination notice was invalid.

## B. Substantial Threat of Irreparable Harm

■ A party requesting a preliminary injunction must show a substantial threat of irreparable injury if the injunction were not granted. *Suntrust Bank*, 268 F.3d at

1265. As Defendant correctly notes, the Eleventh Circuit has held that "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176–77 (citing *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990)).

■ Here, the evidence before the Court shows that Defendants contracted to sell WTKE to one of Plaintiff's primary competitors, Cumulus Broadcasting. Furthermore, the evidence shows that, as reflected in the Agreement, both parties were willing to agree to a provision that the WTKE assets "are unique and cannot be readily obtained in the open market." (D.E. No. 1 at Exh. A, page 32–33). The evidence submitted by both parties reflects the fact that the broadcasting market is a highly regulated, limited, and competitive market. In the context of Plaintiff's acquisition strategy to enter the Ft. Walton Beach market, including its plan to take advantage of "economies of scale" and to compete with cumulus on an "equal basis," the evidence before the Court shows that Plaintiff will suffer irreparable injury if Defendants are permitted to convey the WTKE assets to Cumulus Broadcasting. *See Grand Metropolitan v. Butterworth*, No. Civ. A. 88–40317WS, 1988 WL 1045191(unreported decision) (finding that plaintiffs had established the likelihood of irreparable injury when they faced the possibility of losing a "unique opportunity" to acquire a security).

Furthermore, the evidence before the Court at this time shows that, in light of Plaintiff's investments relating to its Fl. Walton acquisition strategy and expectations under the Agreement, the injury suffered by Plaintiff would be immediate. The evidence before the Court at this time does not show that the FCC has issued a stay or any other administrative order that

prevents the closing of the agreement between Defendants and Cumulus. Thus, Plaintiff has shown that the sale of WTKE to Cumulus Broadcasting will cause immediate irreparable harm.

### C. Balancing of Harms

Here, this Court finds that any harm that Defendant will suffer from the issuance of the preliminary injunction is outweighed by Plaintiff's threatened irreparable injury. Plaintiff has presented evidence that Defendants sought to solicit a better deal through one of Plaintiff's main competitors as early as October 2004, essentially undermining the entire purpose of the Asset Purchase Agreement. For example, a trail of emails obtained through expedited discovery from Cumulus Broadcasting shows that Ronald Hale entered into negotiations with Cumulus beginning as early as October 13, 2004. This evidence raises serious questions as to Defendants' intentions to act in good faith under the terms of the Agreement. The evidence before the Court shows that the potential harm to Defendants if a preliminary injunction is erroneously issued, a delay in the ability of Defendants to sell or transfer the station, is outweighed by the potential irreparable harm to the Plaintiff.

### D. Public Interest Considerations

This Court agrees with Defendant's observation that it is the Federal Communication Commission that should make public interest determinations with regards to the licensing of stations and determining "which party will best serve a market." (D.E. No. 26 at 17). Nevertheless, there is a strong public policy interest in having parties comply with agreements that were freely negotiated, especially between sophisticated business parties that were represented by counsel. Thus, this court finds that granting the preliminary injunction in this case will not disserve the public interest.

### III. Conclusion

For the reasons discussed above, this Court finds that Plaintiff has satisfied all four elements necessary for the issuance of a preliminary injunction. Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

1. Plaintiff's Motion for A Temporary Restraining Order and Preliminary Injunction (D.E. No. 5) is **GRANTED in part and DENIED in part.**

2. This Court hereby issues a preliminary injunction that enjoins Defendants Star Broadcasting, Hale, and each of their agents, employees, and all persons acting in concert or in conspiracy with them or under their control or on their behalf, from directly or indirectly:

(a) soliciting, entertaining, or negotiating with entities other than Qantum with regard to the transfer or sale of the WTKE assets;

(b) consummating the transaction contemplated in any agreement with Cumulus Broadcasting or otherwise conveying the WTKE assets to any third party, and

(c) engaging in further violations of the Non–Solicitation provision in the WTKE Asset Purchase Agreement.

3. Pursuant to Fed.R.Civ.P. 65(c), Qantum shall post a $150,000.00 bond as soon as reasonably practicable, but *no later than 4:30 p.m. on August 12, 2005* as security for Defendants' damages in the event it is determined that this preliminary injunction was wrongfully issued.

4. The preliminary injunction shall remain in effect until further order of the Court.

5. Plaintiff's Motion for A Temporary Restraining Order and Preliminary Injunc-

tion (D.E. No. 5) is **DENIED** in all other respects.

6. The temporary restraining order initially issued on July 5, 2005 (D.E. No. 10) and extended on July 8, 2005 (D.E. No. 17) and on August 3, 2005 (D.E. No. 37) is hereby lifted because the preliminary injunction operates in its place.

7. Plaintiff's Motion to Consolidate Preliminary Injunction Hearing with Trial on the Merits (D.E. No. 19) is hereby **DENIED** as moot.