[No. 48731–6.   En Banc.   June 30, 1983.]

MILLERS CASUALTY INSURANCE COMPANY OF TEXAS,
*Appellant,* v. JAMES A. BRIGGS,
ET AL, *Respondents.*

*Brooks & Larson, P.S.,* and *James E. Davis,* for appellant.

*Raekes, Rettig, Osborne, Forgette & Brecke, Diehl R. Rettig, Carroll, Chvatal & Heye,* and *John G. Carroll,* for respondents.

*William J. Rush* on behalf of Washington Association of Defense Counsel, amicus curiae for appellant.

*Gary N. Bloom* and *Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association, amici curiae for respondents.

DIMMICK, J.—This interpleader action was brought by Millers Casualty Insurance Company of Texas (Millers) to determine the limits of its liability under an automobile insurance policy.[1] Passengers in a car involved in a 1–car accident sought coverage under both the liability and underinsured motorist provisions of an insurance policy insuring the host vehicle. The policy, issued by Millers, excluded the insured vehicle from the definition of an underinsured vehicle. The policy provided protection to the passengers under the liability provisions only. The trial court held that the exclusion was against public policy and violated the underinsured motorist statute, RCW 48.22.030, and ordered Millers to pay the full limits of both the liability and underinsured motorist coverages. We reverse.

Michael Legg, while intoxicated, was driving a vehicle owned by his stepfather. He was involved in a single–car accident. One passenger in the car, Jimmy Briggs, was killed, and another, Milo Summers, was permanently and seriously injured. The vehicle was insured by Millers. The

---

[1]This case was consolidated with Millers Casualty Insurance Company v. Briggs, cause 49105-4, but separate opinions have been written since the issues involved are entirely different.

policy provided liability coverage in the amount of $60,000, and underinsured motorist coverage also in the amount of $60,000. The policy defined an "underinsured motor vehicle" as

an automobile . . . with respect to the ownership, maintenance, or use . . . to which a bodily injury liability . . . policy applies at the time of the accident but its limit is not enough to pay the full amount the injured person is legally entitled to recover as damages . . .

The policy provided further that an "underinsured motor vehicle" shall not include:

(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative, unless the named insured or relative was neither operating nor occupying such vehicle at the time of the accident;
. . .
(4) an automobile or trailer to which the liability coverage of this policy applies.

Summers' father filed a claim with Millers. Millers, believing Briggs' family would do the same, brought this interpleader action. Millers deposited with the court $60,000, the limit of the policy's liability coverage. Summers and Briggs (hereinafter referred to as respondents) argued that Millers was also liable pursuant to the underinsured motorist provisions of the policy and must deposit an additional $60,000 with the court. Millers argued that the policy prevented this dual recovery. The trial court ordered Millers to pay the additional $60,000.

Millers provides underinsured motorist coverage pursuant to RCW 48.22.030 and .040. RCW 48.22.030, originally adopted in 1967, required that all new automobile liability insurance policies provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured* motor vehicles". (Italics ours.) Laws of 1967, ch. 150, § 27, p. 738. In 1980 the Legislature amended RCW 48.22.030. Pursuant to this new statute, insurers are required to offer *underinsured* motorist coverage, although their clients may

choose not to purchase it. RCW 48.22.030(4). Underinsured motorist coverage is designed to provide protection against not only damages caused by uninsured vehicles but also underinsured vehicles. An underinsured vehicle is defined by the statute as a vehicle with respect to which the sum of liability limits "applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1).[2] The statute requires that

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state *unless coverage is provided therein* or supplemental thereto *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles*
> . . .

(Italics ours.) RCW 48.22.030(2). This coverage, like uninsured motorist coverage, is a first party coverage that individuals may purchase to protect themselves against other drivers. Additionally, the statute allows insurers to include provisions limiting coverage to liability for one accident regardless of the number of persons or vehicles involved and provisions preventing an injured person from stacking policies. RCW 48.22.030(5) and (6). These statutory exceptions implicitly overrule two of our rulings interpreting the uninsured statute. *Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 563 P.2d 815 (1977); *Cammel v. State Farm Mut. Auto. Ins. Co.*, 86 Wn.2d 264, 543 P.2d 634 (1975).

---

[2]There are basically two types of statutory definitions of underinsured motorists: Those that focus on the policy limits of the tortfeasor and those, like Washington's, that focus on the extent of damages suffered by the insured victim. Barns & Smith, *Washington's Underinsured Motorist Statute: Examining the Procedural Issues*, 17 Gonz. L. Rev. 269, 272–73 (1982); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds*, 55 Wash. L. Rev. 819, 821 (1980).

Respondents contend that RCW 48.22.030 mandates that they be able to collect under both the liability and underinsured motorist provisions of the policy insuring the vehicle. They argue, therefore, that Millers' restriction which does not allow this dual recovery violates the statute. Their conclusion is based on a very narrow interpretation of the statute. They maintain that since the Legislature set forth several permissible exceptions, and did not expressly allow the insurer to restrict the definition of an underinsured vehicle as Millers' policy does, the restriction is invalid. We disagree.

■ A basic goal of all statutory construction is to carry out the intent of the Legislature. *State v. Waleczek,* 90 Wn.2d 746, 585 P.2d 797 (1978). Legislative history is nonexistent with respect to this particular issue. This lack of history is undoubtedly due to the fact that the situation never arose under the former uninsured motorist statute. In fact, it could not arise under that statute because if the involved vehicle had liability insurance, it could not also be an uninsured vehicle. *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 580 P.2d 622 (1978).

■ To determine the intent of our legislation we are guided by the reasoning of the Louisiana State Supreme Court, the only court to interpret a statute which in all pertinent respects is identical to ours. The facts in *Breaux v. Government Employees Ins. Co.,* 369 So. 2d 1335 (La. 1979) are similar to those in the present case. It involved a 1–car accident wherein a passenger was killed. The estate of the guest passenger settled with the host driver's insurer in the amount of the host's liability coverage only. The passenger's estate then sued the guest's own insurer under the un(der)insured[3] motorist provisions of that policy. The guest's insurer argued that it was not liable until the host's insurer also paid the limits of its un(der)insured motorist

[3]The Louisiana statute and the policy at issue in *Breaux* refer to their coverage as "uninsured" motorist coverage but include within their definitions an underinsured vehicle. La. Rev. Stat. Ann. § 22:1406(D)(2)(b) (West 1979).

coverage. The host's insurer refused to pay relying on a provision in its policy which excluded the host vehicle from the definition of an un(der)insured automobile. The court held that this restriction was not in derogation of the statute's requirements. The court held:

> In our view, the intent and effect of this provision is plain. A person insured under the uninsured motorist provision of a particular policy delivered or issued for delivery in this state with respect to a motor vehicle registered or principally garaged in this state must establish that he is legally entitled to recover damages *from* the owners or operators of uninsured or underinsured motor vehicles in order to obtain coverage thereunder. As to coverage under the uninsured motorist provisions of a particular policy, *the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle.* In addition, as to each policy containing uninsured motorist coverage, *the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.*

(Italics ours.) *Breaux,* at 1338.

Respondents' additional contention that public policy requires that they be able to receive a dual recovery is based on cases decided under the former uninsured motorist statute. *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972); *Federated Am. Ins. Co. v. Raynes, supra; Cammel v. State Farm Mut. Auto. Ins. Co., supra.* Due to the very definition of an uninsured motorist, our court never addressed the situation wherein a passenger attempted to collect under the liability and uninsured provisions of the same policy issued to a driver. *Cf. Strunk v. State Farm Mut. Auto. Ins. Co., supra.* Respondents, however, claim that the same considerations found to be compelling in the cases wherein we invalidated policy provisions purporting to narrow the scope of the former uninsured motorist statute apply in the instant case.

While it is true that both the former uninsured and present underinsured motorist statutes reflect a policy of

providing compensation to the victims of an automobile accident (*Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 208, 643 P.2d 441 (1982)), there are important distinctions between the two statutes and claims arising thereunder. Three differences to be considered in the situation before us have been summarized as:

> First, . . . the injured party has not paid a premium for coverage to this insurer. Thus, there is no danger the insurer will gain a windfall if it is not forced to pay under both provisions of the policy. Second, unlike uninsured motorist coverage, the honoring of this kind of exclusion in underinsured motorist coverage does not leave the injured party completely without compensation. He has already received some compensation pursuant to the liability coverage of the policy. Third, assuming the injured party has automobile insurance of his own, he should be able to collect additional amounts as a result of that policy's underinsured motorist coverage.

Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 827 (1980).

Respondents insist *Mutual of Enumclaw Ins. Co. v. Wiscomb, supra,* controls. *Wiscomb* involved the validity of a family exclusion clause in the liability portion of an automobile insurance policy. Respondents believe that several factors which persuaded us to invalidate the family exclusion clause in *Wiscomb* are present here. First, in both situations the exclusion does not focus upon the risk associated with who is driving, but upon the injured parties. Second, this type of exclusion clause is part of a take–it–or–leave–it package offered by the insurer, and over which neither the insured nor the excluded persons have any bargaining power. Finally, family exclusion clauses are inconsistent with the State's public policy of assuring compensation.

*Wiscomb*'s holding is grounded on reasons not present here. In *Wiscomb,* we recognized that not all exclusions violate the public policy of this state. In that case we were concerned about the parties' lack of bargaining power in

contracting with the insurer. In the instant case the passengers were not contracting parties with Millers. The passengers here were able to purchase the protection they seek from their own insurance company, whereas in *Wiscomb* the parties could not purchase the protection sought. Further, the underinsured motorist limitation here does not "deny" coverage to passengers, it merely limits passengers to the amount provided by the general liability coverage.

Of course, it is unquestioned in this case that the liability coverage paid by Millers does not fully compensate respondents. That fact, however, does not change our conclusion that public policy and RCW 48.22.030 do not require dual recovery in this situation. *Accord,* AGO 13 (1981); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds, supra.*

Our conclusion is also dictated by common sense and the consuming public's general understanding of coverage under these circumstances. The owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost. Further, passengers can obtain underinsured coverage from their own insurers. Consequently, we reverse the trial court's order

requiring payment under Millers' underinsured motorist provision.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.