660 So.2d 399 (1995)
Lucia BULONE, Appellant,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.
No. 94-01984.
District Court of Appeal of Florida, Second District.
September 15, 1995.
*400 Chris M. Limberopoulos of Limberopoulos & Associates, P.A., Tampa, for appellant.
C. Todd Alley and Brenda S. Fulmer of Alley, Ingram & Buckler, Tampa, for appellee.
ALTENBERND, Judge.
Lucia Bulone appeals a final summary judgment denying her claim for uninsured motorist benefits. The trial court ruled that United Services Automobile Association's (USAA) family automobile insurance policy was not statutorily required to insure a family car both as an insured vehicle for purposes of liability coverage and as an underinsured vehicle for purposes of class II uninsured motorist coverage. We affirm the decision and certify conflict with Warren v. Travelers Insurance Co., 650 So.2d 1082 (Fla. 1st DCA), review granted, 658 So.2d 994 (Fla. 1995). Neither the legislative policies described in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), nor recent statutory amendments compel a Florida family to purchase insurance coverage for class II insureds that would often provide better protection than that available for the family's class I insureds.

I. THE FACTS
The facts in this case are comparable to those in Warren. On April 16, 1992, Lucia Bulone sustained serious bodily injuries while a passenger in a pickup truck owned by John A. Moeller and operated by his son, John G. Moeller. Allegedly, the son lost control of the vehicle and collided with a tree.
At the time of the accident, John A. Moeller was insured by USAA. His automobile insurance policy was effective on February 1, 1992, for a term of six months. It insured both the truck and another family car. The policy provided $100,000 per person in bodily injury liability coverage. It also provided $100,000 per person in uninsured motorist coverage.
On May 29, 1992, Ms. Bulone accepted USAA's bodily injury liability limit of $100,000, and signed a release in favor of Mr. Moeller, his son, and USAA. Nevertheless, in January 1993, Ms. Bulone filed this lawsuit alleging that she was also entitled to uninsured motorist benefits as a class II insured under Mr. Moeller's insurance policy with USAA.[1] USAA answered the complaint and moved for summary judgment, arguing that the claim was barred by the release and also by the policy's definition of "uninsured vehicle." The trial court granted summary judgment on the definition. Thus, we do not address the effect, if any, of Ms. Bulone's release.

II. THE STANDARD "OWNED VEHICLE" LIMITATION ON UNDERINSURED MOTORIST COVERAGE
USAA's policy definition of "uninsured motor vehicle" does not include a vehicle "owned by or furnished or available for the regular use of you or any family member." "You" in a "readable" insurance policy is defined to include the named insured in the declarations and a spouse if a resident of the same household. This "owned vehicle" clause is comparable to the restriction in most policies providing uninsured motorist coverage throughout the United States. Alan I. Widiss, Uninsured *401 and Underinsured Motorist Insurance § 5.4 (2d ed. 1992). In this policy, the clause is included within the definitions in the main body of the policy, form 5000(03) 6-80, an Insurance Services Office standard policy, and in a special endorsement, form 5643(08) Rev. 10-89, entitled "Uninsured Motorists Coverage  Florida (Stacked)." Technically, the "owned vehicle" clause is not an exclusion, but it functions as such.
In a state such as Florida with extensive statutory regulation of stacked uninsured motorist coverage for class I insureds and an authorized exclusion for claims between family members, the "owned vehicle" clause is not used to determine coverage for most claims involving class I insureds. See Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla. 1977); Brixius v. Allstate Ins. Co., 589 So.2d 236 (Fla. 1991).[2] Instead, this definition normally is employed to prevent a single insurance policy from treating an owned automobile both as an insured and an uninsured vehicle on claims of class II insureds. This is the context of this case, and we decide the validity of the USAA policy language only as it applies to a class II insured involved in a one-vehicle accident.[3]
On three prior occasions, this court has held that the legislature's strong public policy promoting uninsured motorist coverage is not offended by such a limitation in the definition of "uninsured vehicle." See State Farm Mut. Auto. Ins. Co. v. McClure, 501 So.2d 141 (Fla. 2d DCA), review denied, 511 So.2d 299 (Fla.), op. corrected in, 512 So.2d 296 (Fla. 2d DCA 1987); Fidelity & Casualty Co. of N.Y. v. Streicher, 506 So.2d 92 (Fla. 2d DCA), review denied, 515 So.2d 231 (Fla. 1987); Peel v. Allstate Ins. Co., 522 So.2d 505 (Fla. 2d DCA 1988). See also Nicholas v. Nationwide Mut. Fire Ins. Co., 503 So.2d 993 (Fla. 1st DCA 1987).[4] Ms. Bulone does not ask us to recede from those cases, but rather argues that the legislature intended to increase the coverage available for class II insureds through an amendment in 1989.

III. THE 1989 AMENDMENT
In 1989, the legislature amended section 627.727, in pertinent part, deleting and adding language as follows:
(1) ... The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured ... under any motor vehicle liability insurance coverage; ... and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section. The amount of coverage available under this section shall not be reduced by a setoff against any coverage, including liability insurance. ...
....
(3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
....
(b) Has provided limits of bodily liability for its insured which are less than the total damages sustained by the person legally entitled to recover damages limits applicable to the injured person provided under uninsured motorist's coverage applicable to the injured person.
Ch. 89-243, § 1, at 1024-25, Laws of Fla.
Ms. Bulone argues that this amendment now requires a family automobile policy to provide class II underinsured motorist coverage whenever a passenger's total damages exceed that policy's liability limits. This argument is supported by Warren and *402 also by Travelers Ins. Co. v. Chandler, 569 So.2d 1337 (Fla. 1st DCA 1990). Nevertheless, we do not read the statutory amendment as unambiguously overruling our decisions in McClure, Streicher, and Peel. We further question the reasoning in Chandler,[5] and conclude that the legislative history and the public policies supporting the act do not compel an interpretation that requires a car to be treated as both an insured and underinsured vehicle on the same policy for purposes of class II underinsured motorist coverage.
The 1989 amendment does not disclose a clear and unambiguous legislative requirement that an insurance policy provide dual coverage for a class II insured for a claim arising from a one-car accident. The legislature's language creates underinsured motorist coverage by "deem[ing]" an insured vehicle to be an uninsured vehicle when damages exceed the coverage provided by the liability insurer. The result in Warren would be mandated by the legislature only if "the liability insurer thereof" and "its insured" are intended to apply to the uninsured motorist insurer and its insured claimant, in addition to the insurer and insured on a separate policy. The statute has no definitions requiring this interpretation, and it permits the coverage to be "subject to the terms and conditions" of the uninsured motorist policy. After reading the entirety of section 627.727, as amended, it is reasonable to assume that the legislature is referring to two different insurance policies, and is not intending to stack the uninsured motorist coverage on the liability coverage of one policy for the benefit of class II insureds. Although this assumption is reasonable, there is enough ambiguity in the 1989 amendment to warrant an inspection of the legislative history.

IV. THE LEGISLATIVE HISTORY
To fully understand the intent behind the 1989 amendment, one must delve into the lengthy legislative history of section 627.727. In 1961, when uninsured motorist coverage was first enacted in Florida, the act did not require underinsured motorist coverage. See § 627.0851, Fla. Stat. (1961). Underinsured motorist coverage was added to the statutory requirements in the early 1970s. See Williams v. Hartford Accident & Indem. Co., 382 So.2d 1216 (Fla. 1980) (interpreting language in the 1971 act to provide this coverage). See also ch. 73-180, Laws of Fla. (expressly adding this coverage).
While uninsured motorist law can sometimes be confusing, underinsured motorist law involves even more complex concepts. Both the legislature and the courts have had difficulty in creating an intelligible and workable approach to the proper relationship between the tortfeasor's liability insurance coverage and the claimant's underinsured motorist coverage. In the legislature, these difficulties have been compounded by the pressures of competing interest groups. A review of the legislative history concerning section 627.727 makes it clear that in 1989, the legislature was attempting to solve problems that had not been adequately resolved in prior legislation. Nothing in this legislative history, however, suggests that the legislature wished to overrule McClure and Streicher or increase the premiums paid by Florida families for class II insureds.
Many of the difficult underinsured motorist issues confronted by the legislature and the courts in the 1980s centered on two problems. The first was whether the benefits received from a liability carrier were: (1) a setoff from the damages recoverable from the underinsured motorist carrier, or (2) a reduction in the limits of the underinsured motorist coverage. The second involved whether the underinsured motorist coverage was invoked: (1) only when the liability coverage limits were less than the limits of underinsured motorist coverage, or (2) also when the liability benefits actually payable to *403 the claimant were less than the underinsured motorist limits.
For example, assume a class I claimant in the early 1980s owned an automobile policy with $100,000 in underinsured motorist coverage. If the claimant sustained more than $150,000 in damages in a two-car automobile accident and the tortfeasor's liability insurance carrier paid its $50,000 limit of liability coverage, a setoff of this payment from the claimant's damages would have allowed a payment of the full $100,000 in underinsured motorist benefits. But the law in the early 1980s required a reduction in the limits of the underinsured motorist coverage as a result of this liability payment, resulting in only a $50,000 payment in underinsured motorist benefits. See Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla. 1978). If a tortfeasor had $100,000 limits of liability coverage, i.e., limits equal to the underinsured coverage, a payment of the liability coverage caused the claimant to receive no underinsured motorist payment. See Hurley v. State Farm Mut. Auto. Ins. Co., 438 So.2d 1002 (Fla. 2d DCA 1983). This was true even when only one of several tortfeasors had coverage equal to the claimant's underinsured motorist coverage. See Travelers Ins. Co. v. Wilson, 371 So.2d 145 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 762 (Fla. 1980). When the class I claimant was a passenger in a vehicle involved in a two-car accident in which both vehicles were at fault, questions arose whether the claimant could recover both liability and underinsured motorist coverage for the two separate tortfeasors on one policy. See Woodard v. Pennsylvania Nat'l Mut. Ins. Co., 534 So.2d 716 (Fla. 1st DCA 1988) (allowing coverage for both tortfeasors), review dismissed, 542 So.2d 989 (Fla. 1989). These controversies created conflict among the district courts of appeal, and also resulted in frequent legislative amendments. The amendments sometimes altered the description of coverage in section 627.727(1) and at other times changed the definition of "uninsured motor vehicle" in subsection (3).[6] It is fair to suggest that the amendments did not always achieve the goals intended by the legislature  resulting in more amendments.
In 1984, the legislature amended section 627.727(1) to provide that benefits paid under the tortfeasor's bodily injury liability coverage were a setoff from damages, rather than from the claimant's underinsured motorist coverage. See ch. 84-41, Laws of Fla. This largely superseded the Dewberry opinion. Unfortunately, the legislature only amended subsection (1) to achieve this goal and did not amend subsection (3). Accordingly, the clear language of the statute created an odd result. Assume the claimant had $200,001 or more in damages. If the tortfeasor had $100,000 in coverage and the claimant had equal limits of underinsured motorist coverage, the claimant could receive no uninsured motorist benefits. Thus, Dewberry survived to this extent. However, if the claimant had merely $1 more in coverage, he or she could receive up to $100,001 in underinsured motorist benefits, in addition to the tortfeasor's liability limits. See Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393 (Fla. 1990). Many people believed this result was not the best policy.
Before the Smith decision, the legislature enacted chapter 88-370, Laws of Florida, which was intended to permit setoff only for the liability benefits actually received by the claimant and not the full limit of that coverage. But this amendment treated the liability benefits as a reduction from coverage rather than from damages. Thus, if the tortfeasor had $100,000 in liability coverage, but $90,000 of that coverage was paid to another party and only $10,000 was paid to the claimant, the legislature anticipated that the claimant would receive up to $90,000 from the claimant's $100,000 in underinsured motorist coverage. Again, the legislature only amended subsection (1) to achieve this result and did not amend subsection (3). The legislature's decision to return to the Dewberry reduction from coverage, rather than a setoff against damages, was very controversial.
*404 In the next session, the legislature passed the amendment at issue in this case, chapter 89-243, Laws of Florida. The Final Staff Analysis and Economic Impact Statement for this enactment clearly reveals that the legislature only intended to return underinsured motorist law to its pre-1988 status in which the benefits from the tortfeasor's policy would reduce damages, but not underinsured motorist coverage. To achieve this result, however, the legislature also amended subsection (3).
Nothing in the 1989 legislative history refers to this court's McClure and Streicher decisions in 1987. The economic impact discussion makes no assumption that the amendment will effectively double coverage for class II insureds, and thus, increase exposure for insurance carriers and increase premiums for affected families. The legislature intended to re-establish a setoff from damages rather than from coverage, but there is no evidence that it ever considered requiring one policy to provide class II insureds with dual insurance for one-vehicle accidents.[7]

V. OTHER CONSIDERATIONS
We conclude that the First District underestimated the relevance of the public policies announced in Reid and its progeny. Under this case law, a class I insured receives no uninsured motorist benefits from his or her own policy when that policy's liability coverage excludes a claim involving a negligent family member. In this case, for example, John A. Moeller, the named insured, could have been a passenger sitting next to Ms. Bulone. USAA's insurance policy could lawfully exclude liability coverage for his claim against his son, and the public policy of Mullis would not compel uninsured motorist coverage.[8] As a result, the person who paid for this coverage would have no protection, while the First District's analysis in Warren would give a third party both the liability and the underinsured motorist coverage. We fail to see what strong legislative policy supports this result.
It is also important to consider that an insurance carrier has no right of subrogation against its own insured. Ray v. Earl, 277 So.2d 73 (Fla. 2d DCA), cert. denied, 280 So.2d 685 (Fla. 1973). When USAA pays an underinsured motorist claim involving a solvent tortfeasor, it typically receives subrogation rights from its insured against the tortfeasor. See § 627.727(6), Fla. Stat. (1993). If the "underinsured" tortfeasor is construed to include the insured on the policy, then the subrogation right cannot exist. Without a subrogation right, there is nothing to distinguish this theory of underinsured motorist coverage from liability coverage. Thus, the result is a policy that provides twice the disclosed limit of liability coverage for the claims of passengers. See Millers Casualty Ins. Co. v. Briggs, 100 Wash.2d 1, 665 P.2d 891 (1983).
It is helpful to remember that uninsured and underinsured motorist coverage evolved from unsatisfied judgment insurance. See Mullis, 252 So.2d. at 233; Widiss, supra, § 1.9. The goal of this coverage was to assure that families had protection to satisfy judgments or claims when the negligent operator of a car did not comply with financial responsibility laws. Although this coverage was added to the family automobile policy as the most convenient location for this coverage, it could have been issued as a separate policy or even as a portion of a homeowner's *405 policy.[9] The resident family members are intended to be protected by this coverage when an accident has no logical connection to the family car. For example, they are protected as pedestrians or as passengers in other cars.[10]
By placing this coverage in the family auto policy, the legislature gave free protection to nonfamily passengers as class II insureds. There is some merit to this approach, but a family might logically choose to buy less coverage, rather than more coverage, for the class II insureds. By placing class II uninsured motorist coverage both in Florida's family auto and commercial auto policies, we have created the possibility of several overlapping policies providing uninsured motorist coverage. The strong policies that compelled the legislature to protect the Florida family from unsatisfied claims do not have the same force when applied to class II insureds who have greater protection under the family's liability coverage, and also have the option of purchasing adequate uninsured motorist coverage on their own family auto insurance policy.
The interpretation of section 627.727 in Warren creates statutory requirements never disclosed to the insurance carriers or to the families who have purchased the coverage. If such class II coverage is a desired public policy, the legislature should give the insurance companies notice of the change so that they can increase their premiums to cover the risk. Likewise, before the legislature requires Florida's families to pay the premiums necessary to double protection for class II insureds, this issue should be debated by the legislature.
Affirmed.
PARKER, A.C.J., and WHATLEY, J., concur.
NOTES
[1] Class I includes the named insured and resident family members. Class I uninsured motorist coverage protects the family of the person who purchased and paid for the policy. If Ms. Bulone has uninsured motorist coverage as a class I insured on another policy, that fact is not disclosed in the record.

Class II includes persons occupying an insured vehicle. These passengers do not pay for this uninsured motorist coverage, but receive its protection, essentially as third-party beneficiaries to the family policy, because a family member permitted them to occupy the family car. See Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla. 1971); Quirk v. Anthony, 563 So.2d 710, n. 2 (Fla. 2d DCA 1990), approved, 583 So.2d 1026 (Fla. 1991). In other jurisdictions, these two classes are described as clause A and clause B insureds. See Alan I. Widiss, Uninsured and Underinsured Motorist Coverage § 4.1 (2d ed. 1992).
[2] This is not true in all states. See Janet Boeth Jones, Annotation, Uninsured Motorist Coverage: Validity of Exclusion on Injuries Sustained by Insured while Occupying "Owned" Vehicle Not Insured by Policy, 30 A.L.R.4th 172 (1984).
[3] See National Union Fire Insurance Co. v. Reynolds, 77 Hawai'i 490, 889 P.2d 67 (App. 1995) (upholding validity of comparable clause, with holding restricted to this context).
[4] Although the differences among state statutes make other states' cases merely persuasive, the Second District cases are similar to cases from other states. See Quinn v. Allstate Ins. Co., 37 Conn. App. 188, 655 A.2d 787 (1995); Millers Casualty Ins. Co. v. Briggs, 100 Wash.2d 1, 665 P.2d 891 (1983); Widiss, supra, §§ 5.8, 33.8, 35.5.
[5] Travelers Insurance Co. v. Chandler, 569 So.2d 1337 (Fla. 1st DCA 1990), was actually decided on policy language more generous than the statutory requirements. The opinion explains that Chandler should receive underinsured motorist coverage because he was "covered" under the bodily injury liability policy. Chandler was a passenger and not a permissive user. He was not covered by the liability policy as a potential tortfeasor, but merely collected benefits under that coverage as a claimant. The cases relied upon by the Chandler court involve a separate issue of coverage for class I insureds.
[6] Interestingly, the statutory definition of "uninsured motor vehicle" has never expressly defined that term, but has been used to expand the term to include underinsured motor vehicles or vehicles whose owners present particular collectibility problems.
[7] As a postscript, it is interesting to view the legislative response to Brixius v. Allstate Insurance Co., 589 So.2d 236 (Fla. 1991). In Brixius, the supreme court ruled that a class I insured, injured as a passenger in his or her own car, was not entitled to receive uninsured motorist coverage on the family auto policy when liability coverage was unavailable for the driver, who was a permissive user. Thus, the named insured who had paid for liability coverage to protect permissive users and had also paid for uninsured motorist coverage received no benefits. The legislature quickly rectified this situation in chapter 92-318, Laws of Florida, by adding section 627.727(3)(c). The solution does not stack underinsured motorist coverage on top of liability coverage for the class I insured, but simply provides uninsured motorist coverage when a nonfamily permissive user is not a covered driver for liability insurance purposes.
[8] As explained in footnote 7, even the 1992 amendment superseding Brixius only affected claims involving nonfamily tortfeasors. Thus, the fact that a policy denies liability coverage for an intrafamily claim does not statutorily invoke uninsured motorist coverage.
[9] The decision to market this coverage as a part of an automobile insurance policy, while allowing for class II coverage, effectively denies coverage to some citizens who are at risk from uninsured motorists, but who do not live in families with cars. An elderly couple, who no longer drive and rely on taxis and public transportation, may have a need for class I coverage, but will have no reason to buy automobile liability insurance.
[10] Because uninsured motorist coverage has been sold with auto liability coverage, there has been a tendency to decide that a person is insured as a claimant for uninsured motorist benefits because the person would be an insured as a defendant under the liability coverage. This analysis has severe limitations, even for class I insureds. See World Wide Underwriters Ins. v. Welker, 640 So.2d 46 (Fla. 1994); Government Employees Ins. Co. v. Douglas, 654 So.2d 118 (Fla. 1995). For example, from a practical perspective, a five-year-old child will never be an insured for liability coverage because the child cannot drive, but the child has need for uninsured motorist coverage both as a passenger in the family car and elsewhere. Whether it is good policy to provide Ms. Bulone with both liability coverage as a claimant and underinsured motorist coverage as a class II claimant is not answered by deciding whether she might be insured as a defendant if the Moellers ever let her drive their truck.