IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOSEPH M. THOMPSON, an individual, | ) | No. 35864-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Under Washington's casualty insurance code, chapter 48.22 RCW, a guest passenger injured in an automobile accident is considered a third-party "insured,"[1] and is eligible to make a claim for underinsured motorist (UIM) benefits through the policy covering the vehicle in which he or she was a passenger. But the mere fact that a guest passenger qualifies as an "insured" does not mean the passenger is automatically entitled to UIM benefits. The long-standing rule in Washington is that a third-party guest

---

[1] A "named insured" is the "individual named in the declarations of the policy and includes his [or her] spouse if a resident of the same household." RCW 48.22.005(9). Specific to the facts of this case, the host driver is the "named insured." For readability and consistency purposes, we refer to the host driver as the "named insured" and the guest passenger as an "insured person." Clerk's Papers at 37, 40.

passenger can be excluded from UIM coverage if that passenger has already been compensated through the named insured's liability coverage. This rule has been codified in a somewhat convoluted manner by a vehicle-based (as opposed to a person-based) exclusion, providing that a vehicle insured for liability purposes can, by definition, be excluded from also being a source of UIM benefits to third parties.

Here, Joseph Thompson was injured as a third-party guest passenger in a vehicle insured through Progressive Direct Insurance Company. Progressive tendered the limits of its third-party liability coverage to Mr. Thompson. However, Progressive denied Mr. Thompson's claim for UIM benefits based on the terms of its policy, which excluded UIM benefits to guest passengers for injuries arising from the negligent operation of its named insured's vehicle. Because Progressive's denial of coverage was consistent with the terms of its policy, public policy, and state law, we uphold Progressive's benefit decision. The superior court's judgment to the contrary is reversed.

## FACTS

Joseph Thompson was injured in a single-vehicle accident while traveling as a guest passenger in a vehicle driven by Stacie Haney. Ms. Haney was the "[n]amed insured" under an automobile insurance policy (the Policy) issued by Progressive, and the vehicle driven by Ms. Haney met the definition of a "[c]overed auto" under the general

2

terms of the Policy. Clerk's Papers (CP) at 24, 31. Mr. Thompson was not a named insured under the Policy, and he was not a relative of Ms. Haney, but he met the statutory and policy definition of an "insured" and "insured person." RCW 48.22.005(5)(b)(i); CP at 37, 40. Progressive agreed, for purposes of these proceedings, that its named insured was solely responsible for the accident giving rise to Mr. Thompson's claims.

The Policy issued to Ms. Haney included both liability coverage, for bodily injury and property damage to others, and UIM coverage. Progressive tendered to Mr. Thompson the $100,000 liability limits of the Policy for his bodily injuries sustained in the accident. Because Mr. Thompson alleged that this liability payment did not fully compensate him for the damages resulting from these injuries, he subsequently initiated a claim under the UIM portion of the Policy.

In relevant part, the UIM portion of the Progressive Policy defines an "[i]nsured person" as including "any person **occupying**, but not operating, a **covered auto**." CP at 40 (bolded terms are defined terms in the Policy). The Policy defined an "[u]nderinsured motor vehicle" as "a land motor vehicle or trailer of any type:"

    a. to which no bodily injury liability bond or policy applies at the time of the **accident**;

    b. to which a bodily injury liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
        (i)   denies coverage; or
        (ii)  is or becomes insolvent;

c. that is a hit-and-run vehicle whose owner and operator cannot be identified and which strikes:
   (i) **you** or a **relative**;
   (ii) a vehicle that **you** or a **relative** are **occupying**; or
   (iii) a **covered auto**;
d. that is a **phantom vehicle**; or
e. to which a liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability under all applicable bonds and policies is less than the damages that the **insured person** is legally entitled to recover.

*Id*. at 41. The UIM portion of the Policy also excludes certain vehicles from the definition of an "underinsured motor vehicle." *Id*. In relevant part, this exclusion states:

An "**underinsured motor vehicle**" does not include any vehicle or equipment:
a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**. However, this exclusion to the definition of **underinsured motor vehicle** does not apply to a **covered auto** with respect to **bodily injury** to **you** or a **relative**;
. . . .
f. that is a **covered auto**. However, this limitation on the definition of **underinsured motor vehicle** does not apply to a **covered auto** with respect to bodily injury to **you** or a **relative**.

*Id*. The UIM coverage agreement within the Policy states that Progressive:

will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:
1. sustained by that **insured person**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

4

*Id*. at 40.  The Policy has general provisions that define a "relative" as someone who resides with the named insured, is related to the named insured "by blood, marriage, or adoption, and includes a ward, stepchild, or foster child," and the named insured's "unmarried dependent children temporarily away from [the named insured's] home" so long as they expect to continue to reside in the named insured's home.  *Id*. at 32.

In correspondence denying Mr. Thompson's UIM claim, Progressive stated that while Mr. Thompson was an "insured person" as defined by the Policy and RCW 48.22.005(5)(b)(i), he was excluded from UIM coverage under its Policy because his injuries and damages were not sustained by the operation of an "underinsured motor vehicle."  *Id*. at 65; RCW 48.22.030(1).  Progressive explained that Ms. Haney's vehicle did not meet the policy definition of an "underinsured motor vehicle" as it was a "covered auto" under the Policy.  CP at 66.  Progressive also stated its Policy was "in compliance with the statute [RCW 48.22.005 and RCW 48.22.030] on all points including on who an 'insured person' is, and more importantly what an 'underinsured motor vehicle' is."  *Id*.

Mr. Thompson initiated a declaratory judgment action in superior court, seeking a determination that he was entitled to UIM coverage and benefits under the Policy.  The superior court granted summary judgment in favor of Mr. Thompson, holding that

UIM coverage was required because Mr. Thompson met the "definition of 'insured' under RCW 48.22.005," CP at 209, and Progressive could not use its Policy to erode the statutory definition. Mr. Thompson was also awarded attorney fees and costs.

Progressive appeals the order granting Mr. Thompson's motion for summary judgment and the final judgment establishing attorney fees and costs.

ANALYSIS

The parties agree that under the terms of Progressive's Policy, Mr. Thompson was excluded from UIM coverage. While Mr. Thompson fell under the definition of an "insured person," CP at 40, he was not injured through the operation of a qualifying vehicle. Specifically, the vehicle giving rise to Mr. Thompson's injuries was covered by the Policy and Mr. Thompson was not the named insured or a relative of the named insured. As previously noted, UIM benefits are typically triggered in the context of liability involving a third-party vehicle, not a vehicle covered by the same policy. The only exception is when the named insured or a family member of the named insured is the person seeking UIM benefits.

Recognizing that the terms of Progressive's Policy do not afford him UIM coverage, Mr. Thompson argues that excluding the named insured's vehicle from coverage as an "underinsured motor vehicle" violates state law and public policy.

As a result, he claims the exclusion must be struck. *Bohme v. Pemco Mut. Ins. Co.*, 127 Wn.2d 409, 412, 899 P.2d 787 (1995) (A UIM exclusion must be struck if it conflicts with state statute or public policy.). Our review of this legal claim is de novo. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990), *overruled on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004).

Mr. Thompson's public policy argument is foreclosed by binding precedent. In *Blackburn v. Safeco Insurance Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990) and *Millers Casualty Insurance Co. of Texas v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983) our Supreme Court approved of UIM exclusions for third-party guest passengers. As recognized by the court, liability insurance exists for the protection of an individual, such as Mr. Thompson, who is a third party to an insurance contract and who has sustained injuries based on a named insured's negligence. *Millers*, 100 Wn.2d at 8. But UIM coverage is fundamentally different. UIM coverage is meant to protect the named insured "and others from damages caused by *another* vehicle which is underinsured." *Id.* (emphasis added). A third party has "the option of contracting with an insurance company for" their own UIM coverage. *Blackburn*, 115 Wn.2d at 89. But public policy does not require an insurance company to provide UIM benefits to an individual who has opted not to obtain UIM protection. *See Fleming v. Grange Ins. Ass'n*, 73 Wn. App. 570,

7

576, 870 P.2d 323 (1994) ("[W]hile the public policy underlying Washington's UIM statute is to maximize the protection afforded by insurance coverage, it does not require insurance companies to provide the coverage for free.") (citing *Blackburn*, 115 Wn.2d at 88). *See also Vasquez v. Am. Fire & Cas. Co.*, 174 Wn. App. 132, 138, 298 P.3d 94 (2013) (UIM coverage is restricted insurance "chiefly for the benefit of the named insured," and limiting who else is defined as "an 'insured' does not run afoul" of the UIM statute's public policy.).

Both *Blackburn* and *Millers* also held that excluding third-party guest passengers from UIM coverage did not violate Washington's UIM statute. Recognizing this fact, Mr. Thompson argues state law has been modified since the decisions in *Blackburn* and *Millers*. Specifically, in 1993 the legislature added a "definitions" section to the casualty insurance code, making clear that a guest passenger, not just a named insured, meets the definition of an "insured." RCW 48.22.005(5)(b)(i).

Mr. Thompson's reliance on RCW 48.22.005(5)(b)(i) is inapposite. Both *Blackburn* and *Millers* already recognized that a guest passenger met the definition of an "insured" for purposes of UIM coverage. *Blackburn*, 115 Wn.2d at 88-89. That was not an issue. What was at issue was whether a guest passenger, as an insured person but not the named insured or a relative thereto, could be denied UIM coverage based on policy

8

No. 35864-0-III
*Thompson v. Progressive Direct Ins. Co.*

language that excluded recovery from injuries caused by the operation of a covered

vehicle. As previously stated, both *Blackburn* and *Millers* upheld the exclusions under

state law. All RCW 48.22.005(5) did was to codify the essential definition of "insured"

utilized by the Supreme Court in *Blackburn*. 115 Wn.2d at 88-89.[2] Consistent with

*Blackburn* and *Millers*, RCW 48.22.005(5) differentiates between a named insured,

RCW 48.22.005(5)(a), and a third-party (other) insured person, RCW 48.22.005(5)(b).

Given the consistency of RCW 48.22.005(5) with the Supreme Court's decisions in

*Blackburn* and *Millers*, the enactment of this statute in 1993 cannot be fairly read as a

legislative effort to overturn *Blackburn* and *Millers*.

---

[2] *Blackburn* recognized two categories of "insureds" for purposes of UIM coverage: the "named insured" and the "other insured." 115 Wn.2d at 88. The UIM portion of the policy at issue in *Blackburn* defined "insured" as, "1. You or any family member[.] 2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction." *Id*. at 84. In codifying the definition of "insured," our legislature similarly recognized two categories of insureds. RCW 48.22.005(5) defines "insured" as: "(a) The named insured or a person who is a resident of the named insured's household and is either related to the named insured by blood, marriage, or adoption, or is the named insured's ward, foster child, or stepchild; or (b) A person who sustains bodily injury caused by accident while: (i) Occupying or using the insured automobile with the permission of the named insured; or (ii) a pedestrian accidentally struck by the insured automobile."

9

Rather than looking to RCW 48.22.005(5)'s definitions, the statute applicable to

Progressive's UIM exclusion is RCW 48.22.030, which as not been modified in pertinent

part since the Supreme Court's decisions in *Blackburn* and *Millers*.  Since 1981, this

statute has defined an "underinsured motor vehicle" as:

> a motor vehicle with respect to the ownership, maintenance, or use of which
> either no bodily injury or property damage liability bond or insurance policy
> applies at the time of an accident, or with respect to which the sum of the
> limits of liability under all bodily injury or property damage liability bonds
> and insurance policies applicable to a covered person after an accident is
> less than the applicable damages which the covered person is legally
> entitled to recover.

RCW 48.22.030(1).

The statute also includes a mandate regarding UIM coverage (last amended in

1985), which states:

> No new policy or renewal of an existing policy insuring against loss
> resulting from liability imposed by law for bodily injury, death, or property
> damage, suffered by any person arising out of the ownership, maintenance,
> or use of a *motor vehicle* shall be issued with respect to any *motor vehicle*
> registered or principally garaged in this state unless coverage is provided
> therein or supplemental thereto for the protection of persons insured
> thereunder who are legally entitled to recover damages from owners or
> operators of *underinsured motor vehicles*, hit-and-run motor vehicles, and
> phantom vehicles because of bodily injury, death, or property damage,
> resulting therefrom, except while operating or occupying a motorcycle or
> motor-driven cycle, and except while operating or occupying a motor
> vehicle owned or available for the regular use by the named insured or any
> family member, and which is not insured under the liability coverage of the
> policy. The coverage required to be offered under this chapter is not

> applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

RCW 48.22.030(2) (emphasis added).

As recognized in *Blackburn* and *Millers*, the UIM statute is written in a way that references two general classes of vehicles. There is the "motor vehicle" for which liability coverage has been issued (i.e., the "covered auto") and there are third-party "underinsured motor vehicles," which are not covered by a named insured's policy. The UIM statute contemplates coverage only for bodily injury, death, or property damage caused by the operation of third-party vehicles. Although public policy prohibits excluding a named insured or the named insured's family members from UIM coverage involving a covered vehicle, *see Tissell v. Liberty Mutual Insurance Co.*, 115 Wn.2d 107, 112-14, 795 P.2d 126 (1990), nothing in Washington's casualty insurance code requires extending UIM coverage to a third party with a liability claim against the same covered vehicle. Instead, the third party's recourse is to rely on liability insurance, the personal responsibility of the negligent driver, and the third party's own insurance coverage. The UIM statute does not provide an additional avenue for recovery.

No. 35864-0-III
*Thompson v. Progressive Direct Ins. Co.*

CONCLUSION

We reverse the superior court's summary judgment order and award of attorney

fees and costs. This matter is remanded for entry of judgment in favor of Progressive.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

12

No. 35864-0-III

FEARING, J. (concurring) — I hold a differing perspective than the majority, but, based on Washington Supreme Court precedent and a review of chapter 48.22 RCW, I concur in the majority's decision.

In *Millers Casualty Insurance Co. v. Briggs*, 100 Wn.2d 1, 665 P.2d 891 (1983), the Evergreen State Supreme Court unanimously held that an insurance carrier may exclude underinsured motorist coverage from a passenger traveling in a vehicle insured for liability coverage by the carrier as long as the traveler is not the insured or a family member residing with the insured. Seven years later the state high court affirmed the holding of *Millers* in *Blackburn v. Safeco Insurance Co.*, 115 Wn.2d 82, 794 P.2d 1259 (1990). The *Blackburn* court was not unanimous, however. Two dissenters distinguished *Millers* on the difference that Bret Blackburn was also denied payment under the liability coverage of the Safeco insurance policy. Nevertheless, the dissenters also wished to overrule *Millers* because the exclusion barring underinsured motorist coverage for the passenger limited insurance coverage on a basis other than the risk of the insurer and thereby contravened Washington's policy of full compensation for accident victims.

I concur in the reasoning of the dissenters in *Blackburn v. Safeco Insurance Co.* But unlike dissenting members of the Supreme Court, I am bound by Supreme Court precedent.

Three years after *Blackburn v. Safeco Insurance Co.*, the Washington State Legislature adopted House Bill 1233, titled "Motor Vehicle Insurance—Personal Injury Protection Benefits." LAWS OF 1993, ch. 242. Joseph Thompson contends the 1993 bill legislatively overruled *Millers Casualty Insurance Co. v. Briggs* and *Blackburn v. Safeco Insurance Co.* The relevant portion of the bill declared:

**CHAPTER 242**
[Engrossed Substitute House Bill 1233]
MOTOR VEHICLE INSURANCE—PERSONAL INJURY
PROTECTION BENEFITS

. . . .
*AN ACT Relating to mandatory offering of personal injury protection insurance; adding new sections to chapter 48.22 RCW; creating a new section;* and providing an effective date.

. . . .
NEW SECTION. **Sec. 1.** Unless the context clearly requires otherwise, the definitions in this section *apply throughout this chapter*.

. . . .
(5) "Insured" means:

. . . .
(b) A person who sustains bodily injury caused by accident while: (i) Occupying or using the insured automobile with the permission of the named insured. . . .

NEW SECTION. **Sec. 2.** (1) No new automobile liability insurance policy or renewal of such an existing policy may be issued unless personal injury protection coverage benefits . . . for medical and hospital expenses, funeral expenses, income continuation, and loss of services sustained by an *insured* . . . are offered as an optional coverage.

2

(Emphasis added.) Sections 3 to 5 of House Bill 1233 address the extent to which a casualty insurer must afford personal injury protection coverage.

This appeal concerns section 1 of House Bill 1233's definition of "insured" and whether that definition extends to more than the provisions of the bill and to an underinsured motor vehicle insurance statute found in RCW 48.22.030. Note that section 1 of House Bill 1233 applies its definitions to "this chapter." The prior portions of the bill, however, reference two distinct "chapters": first, chapter 242, the number from Washington LAWS OF 1993; and second, chapter 48.22 RCW. Confusion arises as to whether the definitions announced in section 1 of House Bill 1233 apply to chapter 242 of the LAWS OF 1993, to chapter 48.22 RCW, or to both. The confusion escalates when one learns that section 1 of House Bill 1233 became RCW 48.22.005 and one observes that chapter 48.22 RCW refers to creditor coverage, vendor coverage, and underinsured motorist coverage in addition to the sections for personal injury protection coverage added by House Bill 1233.

As a result of House Bill 1233, the Washington State code reviser created three new code sections and placed sections 3 through 5 of the bill into RCW 48.22.090, RCW 48.22.095, and RCW 48.22.100. The reviser created a new code section and inserted verbatim section 1 of the House Bill 1233 into RCW 48.22.005. RCW 48.22.005 now reads in relevant part:

Unless the context clearly requires otherwise, the definitions in this

3

section apply throughout *this chapter*.

. . . .

(5) "Insured" means:

. . . .

(b) a person who sustains bodily injury caused by accident while (i) Occupying or using the insured automobile with the permission of the named insured. . . .

(Emphasis added.)

We must juxtapose RCW 48.22.005 with RCW 48.22.030(2), the underinsured motor vehicle insurance statute. The latter statute declares:

No new policy or renewal of an existing policy insuring against loss resulting from liability . . . shall be issued . . . unless coverage is provided therein . . . for the protection of persons *insured* thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles[.] . . . except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.

(Emphasis added.) The lengthy sentence and confusing language of RCW 48.22.030 may nonsensically suggest that the exclusion from underinsured motor vehicle coverage cannot apply if the car, in which the insured rode, is not listed in the liability policy. But no one raises this point. Surprisingly the Washington appellate courts have never addressed the ambiguity caused by the two different references to a "chapter" in House Bill 1233 or addressed the aggravation of the uncertainty resulting from the insertion of section 1 of the bill in RCW 48.22.005.

Joseph Thompson rode in a car driven by Stacie Haney and insured for liability coverage by Progressive Direct Insurance Company. Haney's negligence caused the

4

accident. Thompson was not a family member of Haney. Thompson recovered $100,000 under the liability insurance endorsement of the Progressive insurance policy, but he claims the $100,000 does not fully compensate him for the injuries sustained in the accident. He seeks to recover underinsured motorist benefits under the Progressive policy. The policy excludes from the definition of "underinsured motor vehicle" a vehicle covered under the liability endorsement of the insurance policy except as to Haney or her family members.

Joseph Thompson astutely argues that the definitions inserted into RCW 48.22.005 should control the remainder of chapter RCW 48.22. Thompson particularly asks that RCW 48.22.005's definition of "insured" control the meaning of "insured" in RCW 48.22.030. RCW 48.22.030 demands a motor vehicle casualty policy cover an "insured" under the underinsured motor vehicle endorsement. RCW 48.22.005, for purposes of "this chapter," defines an "insured" as a person who sustains bodily injury caused by accident while occupying the insured automobile.

I disagree with Joseph Thompson's analysis. The Washington State Legislature holds the prerogative in declaring public policy with regard to requirements for casualty insurance. Therefore, our fundamental purpose in construing an insurance statute is to ascertain and fulfill the intent of the legislature. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). This court should construe the statute to effect its purpose. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). If the statute

5

is ambiguous, we may rely on legislative history. *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (2011).

The preamble to House Bill 1233 reads that the bill seeks to impose mandatory requirements for offering personal injury protection coverage, to "add new sections" to chapter 48.22 RCW, and to "create a new section." One might quizzically ponder the difference between "adding" a new section and "creating" a new section. Regardless, the bill does not expressly identify which section of House Bill 1233 becomes the "created" section as opposed to the added sections, and the bill does not declare where in the Revised Code of Washington the created section should fall. I might guess that the legislature intended section 1 of House Bill 1233 to be the "newly created" section, and that, if the legislature considered the question, it might wish the "created section" to lie inside RCW 48.22. But House Bill 1233 does not expressly declare that the definitions listed in the new section, including the definition for "insured," should control all of the provisions of chapter 48.22 RCW. The legislature did not direct where to insert the created section within RCW 48.22. The code reviser could have placed this new or created section after RCW 48.22.030 and immediately before the three sections addressing personal injury protection coverage.

All definitions listed in section 1 of House Bill 1233 and, in turn, contained in RCW 48.22.005 correspond to words or phrases found elsewhere in House Bill 1233 and, in turn, the personal injury protection coverage statutes codified in RCW 48.22.090 to

6

RCW 48.22.100. Or all such definitions help to define other terms inside section 1 of House Bill 1233 and RCW 48.22.005. RCW 48.22.030, which creates mandatory underinsured motor vehicle coverage, contains its own two internal definitions.

House Bill 1233 shows a primary, if not exclusive, intent in imposing mandatory requirements on insurance companies to offer personal injury protection coverage for automobile insurance policies. The title to the bill only references personal injury protection benefits. House Bill 1233 shows no intent to modify the law with regard to mandatory underinsured motor vehicle insurance coverage. RCW 48.22.005's definitions should be read in this light.

I find no Washington case law that addresses whether legislative intent as expressed in an underlying bill holds priority over the manner in which a code reviser inserts the language of the bill into a code. Nevertheless, the populace elects legislators, not code compilers, to enact law. Washington courts have declared that the code reviser's labeling of a statute should not change the meaning of the legislature's enactment. *Tesoro Refining & Marketing Co. v. Department of Revenue*, 164 Wn.2d 310, 318 n.3, 190 P.3d 28 (2008); *State v. Cooley*, 53 Wn. App. 163, 166, 765 P.2d 1327 (1989).

Foreign jurisdictions have announced rules more apt to this appeal. In construing a statute, courts should not consider the title of a chapter where the reviser places an enactment or the location within the code where the reviser places the enactment.

7

No. 35864-0-III
*Thompson v. Progressive Direct Ins. Co.*

*American Premier Insurance Co. v. McBride*, 159 S.W.3d 342, 349 (Ky. Ct. App. 2004). The construction of a statute cannot be affected by the insertion of the statute by the compiler of the code. *Chesapeake & Ohio Railway Co. v. Pew*, 109 Va. 288, 64 S.E. 35, 37 (1909).

Joseph Thompson's insertion of the definition of "insured" from RCW 48.22.005 into RCW 48.22.030 would render other language in RCW 48.22.030 inoperative. The statute allows the insurance company to exclude underinsured motor vehicle coverage for an "insured" while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member. Inserting RCW 48.22.005's definition of "insured" into RCW 48.22.030 would preclude this exception. Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. *Spokane County. v. Department of Fish & Wildlife*, 192 Wn.2d 453, 457-58, 430 P.3d 655 (2018).

I CONCUR:

_____
Fearing, J.

8